## Curtis v. Commonwealth.

June 3, 1949.

As Modified on Denial of Rehearing

February 21, 1950.

W. J. Baxter, Judge.

206

Shumate & Shumate for appellant.

A. E. Funk, Attorney General, and Armand Angelucci, Assistant Attorney General, for appellee.

JUDGE THOMAS—Affirming.

At his separate trial in the Madison circuit court of an indictment charging him and Glenmore Moberley of the crime of barn breaking and stealing therefrom a jersey cow belonging to C. H. Gibson, of the value of $125, the appellant was found guilty and punished by confinement in the penitentiary for three years.

On this appeal appellant's counsel presents and argues but one ground as alleged error sufficient to authorize a reversal of the judgment which is: "The trial court committed reversible error by permitting the witness, Capt. John Black, to testify to facts involved in an alleged confession of the appellant." That contention, of course, is based upon the further one that the confession testified to by the witness—who was a captain in the State Highway Patrol—was obtained in violation of the provisions of section 422.110, KRS, commonly referred to as our "Anti-Sweating Act." No witness testified for appellant, he contenting himself with resting his case on the proof adduced by the Commonwealth.

The facts so developed are that Gibson is a farmer living some three or four miles from Richmond, Ken-

tucky. He ran a small dairy business and owned a herd of 10 or 12 jersey cows which he housed at night in a barn on his farm.

In the early morning of March 15, 1947, at about 4 o'clock A. M., Gibson went to the barn to milk his cows and found one of them missing, which he valued at $125. He notified the Highway Patrol, and perhaps the sheriff's office, and upon examination of the barn and its surroundings they discovered a number of tracks made by a truck tire which they traced down the road leading to Somerset and likewise traced tracks of the same truck to the home of appellant. The truck was parked near the front gate of the yard surrounding the Curtis residence. Its tires were examined by the officers, one or more of which fitted the tracks that the officers had traced.

They found appellant at home and asked him to go to the office of the patrol with them, having first asked him if he was the owner of the truck. He then stated that he was the owner. They then asked him if he had been out with the truck on Saturday night and had made a trip or trips over the road where the tracks were found and he acknowledged that he had. They then asked him concerning a flashlight that had been found apparently somewhere near the entered barn, following which he, according to the evidence, of his own accord, confessed to the commission of the crime in conjunction with his co-defendant, Moberley. After doing so he told what he did with the cow, which was, that she was transported in the truck to Somerset and placed in a stock pen where stock was collected for the purpose of sales; that he sold the cow to Lee Dagley, a farmer living about three or four miles from Somerset, the purchase price being $115. He was then asked if he was paid cash or by check and he answered that Dagley gave him a check on a Somerset bank for $115, the agreed sale price. He said that he did not cash the check, nor did he endorse it, but put it in his pocketbook which he had hidden behind some furniture in his home.

The cow was at once identified by Gibson as the one stolen from his barn and Dagley testified that he purchased the cow from appellant who told him that he had raised her, and that he (Dagley) issued a check to Curtis for $115.

Captain Black, who was the questioner of appellant, testified positively that he nowhere asked him if he had stolen the cow, but other witnesses for the Commonwealth testified that that question may have been asked of appellant. The questions propounded to appellant by officer Black contained no threats, no promises of leniency if a confession were made, nor other inducement to extort from him an involuntary confession, though inquiry was made of him concerning his ownership of the truck, and his use of it on the night of the commission of the crime.

Pages 1710, to and including a portion of 1714, of Notes and Annotations to the Kentucky Revised Statutes, contain annotations of this court's interpretation and application of the section supra of the statute in which a vast number of our cases are cited showing when the confession is voluntary and admissible, and when involuntary and inadmissible. One of the annotations is:

"Confession made without threats, duress, or other circumstances rendering it involuntary is admissible against person confessing, notwithstanding it is made after arrest. Clark v. Commonwealth, 269 Ky. 833, 108 S. W. 2d 1036; Edmonds v. Commonwealth, 230 Ky. 725, 20 S. W. 2d 745; Myers and Cannon v. Commonwealth, 212 Ky. 245, 278 S. W. 620; Sutton v. Commonwealth, 207 Ky. 597, 269 S. W. 754; Boyd and Jones v. Commonwealth, 194 Ky. 73, 238 S. W. 182; Dials v. Commonwealth, 192 Ky. 440, 233 S. W. 888; Garrison v. Commonwealth, 169 Ky. 188, 183 S. W. 473; Dorsey v. Commonwealth, 158 Ky. 447, 165 S. W. 405; Hathaway v. Commonwealth, 82 S. W. 400, 26 Ky. Law Rep. 630.

"The purpose of this act is to exclude confessions obtained through the exercise of highly improper methods, amounting to duress or putting in fear, or the offering of inducements or temptations, causing the confession to be made other than by voluntary will. A voluntary confession, although made to an officer while under arrest, is admissible if not obtained by any of the methods prohibited. Powell v. Commonwealth, 276 Ky. 234, 123 S. W. 2d 279."

In the case of McClain v. Commonwealth, 284 Ky. 359, 144 S. W. 2d 816, 818, wherein we quoted from Ben-

nett v. Commonwealth, 242 Ky. 244, 46 S. W. 2d 84, we said:

"The 'plying with questions' forbidden by Section 1649b-1 means 'the persistent and repeated propounding of inquiries to elicit a desired answer, carried to such an extent that the prisoner feels required to answer as the questioner wishes in order to escape from the pressure.' "

Our interpretation of the statutory section as above shown is in accord with the general rule approved by text writers and courts of other states as it appears in 20 Amer. Jur. 432 and 433, section 500, in which it is written:

"Spontaneity is not necessary to the voluntariness of a confession, and in this country it is universally recognized that a confession is not rendered inadmissible in evidence merely because it was elicited by inquiries and questions addressed to the accused. This rule applies whether the questioning is done by a magistrate, prosecuting attorney, police officer or private person. * * *.

"The fact that the confession was made in response to a question assuming the guilt of the accused is not of itself sufficient to exclude it, unless the question was so framed as to trap the accused and inspire hope or fear or was accompanied by menacing circumstances."

We therefore conclude that the confession of appellant in this case was not an involuntary one and therefore admissible.

Wherefore, the judgment is affirmed.