Aginon WILSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 91–CA–1080–MR.

Court of Appeals of Kentucky.

July 17, 1992.

Rehearing Denied Oct. 30, 1992.

Frank W. Heft, Jr. and Daniel T. Goy-
ette, Louisville, for appellant.

Chris Gorman, Atty. Gen. and Carol C.
Ullerich, Asst. Atty. Gen., Frankfort, for
appellee.

Before LESTER, C.J., and JOHNSON
and SCHRODER, JJ.

JOHNSON, Judge.

This is an appeal from a Jefferson Circuit Court order denying shock probation to the appellant, Aginon Wilson. On or about July 22, 1989, Wilson attacked Sheila M. Alexander Claycomb. Appellant "slashed" Ms. Claycomb with a piece of glass inflicting multiple cuts on her face, arms, and chest. Appellant was indicted by the Jefferson County Grand Jury for one count of assault in the second degree (KRS 508.020). Subsequently, appellant entered into a plea agreement with the Commonwealth whereby he would plead guilty to assault in the second degree and the Commonwealth would recommend the minimum sentence of five (5) years while taking no stand on probation. On October 24, 1990, the plea agreement was signed by Hon. Thomas Faulkner, Jefferson County Assistant Commonwealth's Attorney, on behalf of the Commonwealth, Hon. Anne Penn Hardy as counsel for appellant, and appellant. A "Motion to Enter Guilty Plea" was also signed by Ms. Hardy and appellant on that date. Jefferson Circuit Judge Ken G. Corey accepted appellant's guilty plea on October 24, and Judge Corey then passed the case to Jefferson Circuit Judge Edwin A. Schroering for sentencing. The "Judgment on Guilty Plea" dated October 25, 1990, was signed by Judge Schroering.

On December 12, 1990, Judge Schroering held a sentencing hearing at which attorneys Faulkner and Hardy were present along with Ms. Claycomb, Claycomb's spouse, and appellant. The Commonwealth asserted that it had no stand on probation; however, it informed the court that the victim, Ms. Claycomb, was present and willing to answer any questions asked by the court. Judge Schroering made an inquiry regarding restitution. Appellant did not at the time of sentencing nor on appeal object to Judge Schroering's discussion with the Commonwealth and Ms. Claycomb at the sentencing hearing. Ultimately, appellant's motion for probation was denied, and a five-year sentence was imposed.

Appellant filed a timely motion for shock probation, and on April 17, 1991, Judge Schroering held a hearing on the motion. Present at the hearing were Hon. Ruthanne Whitt, Jefferson County Assistant Commonwealth's Attorney, on behalf of the Commonwealth, Hon. Sandra J. Arbuckle on behalf of appellant, Ms. Claycomb and appellant. After appellant presented his argument for shock probation, Judge Schroering inquired as to the Commonwealth's and the victim's positions. At that time both the Commonwealth and Ms. Claycomb argued against shock probation. Counsel for appellant objected to the Commonwealth's stated opposition and Ms. Claycomb's testimony claiming that both had violated the plea agreement. The record indicates that Judge Schroering was under the impression that probation was not covered under the agreement. Both counsel for the Commonwealth and counsel for appellant attempted to inform the court that probation was covered under the agreement. Although the Commonwealth agreed that probation was covered under the plea agreement, it argued that shock probation was not covered. However, a study of the record suggests that the court nonetheless proceeded under the assumption that probation was not covered by the agreement. The mistake was compounded by the fact that counsel for appellant was proceeding under the erroneous belief that Ms. Claycomb had signed-off on the plea agreement. The judge stated that he always considered the plight of the victim when assessing punishment. Further, the judge, operating under the belief that the Commonwealth had not bargained away in the plea agreement its right to oppose shock probation, considered the Commonwealth's argument against shock probation. Appellant's Motion for Shock Probation was overruled by a final order of the Jefferson Circuit Court entered April 22, 1991.

■ In reviewing this matter we must first examine the terms of the plea agreement. The Commonwealth utilized a standard form to draft the plea agreement. The section entitled "Recommendation on a Plea of Guilty (Plea Agreement)" contained a holographic entry which stated "5

YEARS, NO STAND ON PROBATION".[1] Clearly, the Commonwealth agreed to forego its right to object to probation. This appeal concerns the effect of the plea agreement on both the rights of the Commonwealth and the rights of the victim. The issue as to the rights of the Commonwealth which we will consider first, is whether probation includes shock probation.

The Commonwealth asserts that shock probation and probation are distinct concepts. The underpinning of the argument is the fact that shock probation and other forms of probation are covered under different chapters of the Kentucky Revised Statutes. Furthermore, the Commonwealth asserts that the procedural steps for granting shock probation differ from other forms of probation, so it is of a distinctly different character.

The Commonwealth's position is contrary to the legislative scheme. KRS Chapter 533 is titled *"Probation* and Conditional Discharge" (Emphasis added.). KRS Chapter 439 is titled *"Probation* and Parole" (Emphasis added.). Clearly, the Commonwealth's argument that Chapter 533 serves as the sole governing statutory authority on probation is in error. Obviously, Chapter 439 also governs probation. The difference between the two chapters can be easily explained.

There are two ways to place a person on probation. There is probation at sentencing, and there is shock probation which follows sentencing. The distinction between the two methods is based on timing. KRS 533.020(1) provides:

When a person who has been convicted of an offense or who has entered a plea of guilty to an offense is not sentenced to imprisonment, the court shall *place him on probation* if he is in need of the supervision, guidance, assistance, or direction that the probation service can provide. Conditions of probation shall be imposed as provided in KRS 533.030, but the court may modify or enlarge the conditions or, if the defendant commits an additional offense or violates a condition, revoke the sentence at any time prior to the expiration or termination of the period of probation. (Emphasis added.)

KRS 439.265(1) provides,

Subject to the provisions of KRS Chapter 439 and Chapters 500 to 534, any Circuit Court may, upon motion of the defendant made not earlier than thirty (30) days nor later than one hundred eighty (180) days after the defendant has been incarcerated in a county jail following his conviction and sentencing pending delivery to the institution to which he has been sentenced, or delivered to the keeper of the institution to which he has been sentenced, suspend the further execution of the sentence and *place the defendant on probation* upon terms the court determines. Time spent on any form of release following conviction shall not count toward time required under this section. (Emphasis added.)

In each instance the trial court has the ability to place a defendant on probation. KRS 533 discusses application of probation prior to sentencing, while KRS 439 discusses application of probation after sentencing. Examining the two chapters, it is clear that they should be read together. KRS 439.265 is expressly subject to Chapters 500 to 534. Furthermore, KRS 533.-030(5) and KRS 533.060(2) contemplate shock probation as being similar to conditional discharge and other forms of probation. Consequently, shock probation is one form of probation given general coverage in Chapter 533 and specific coverage in Chapter 439. The statutory factor that distinguishes shock probation is the timing of the circuit court's order. Thus, shock probation is a form of probation, and appellee's argument to the contrary is not compelling.

■ The terms of the plea agreement are very simple. In exchange for appellant's plea of guilty the Commonwealth

---

1. This recommendation by the Commonwealth was noted by the trial court in the Judgment on

Guilty Plea entered October 25, 1990.

would recommend the minimum sentence and take no stand on probation. Had the Commonwealth chosen, it could have retained the right to object to shock probation. However, it did not. Appellant's objection to the Commonwealth's position is well-founded. The Commonwealth must live up to its end of the bargain. *See Commonwealth v. Reyes*, Ky., 764 S.W.2d 62, 68 (1989). *See also, Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The fact that the Commonwealth's recommendation was not binding on the circuit judge does not excuse the breach. *Wood v. Commonwealth*, Ky., 469 S.W.2d 765, 766 (1971). This matter must be remanded for a new hearing on the Motion for Shock Probation with the Commonwealth taking no stand at that hearing.

The next issue concerns the right of Ms. Claycomb, the crime victim, to take a stand on shock probation. Appellant objects to the victim's opposition to shock probation. Appellant states that at the sentencing hearing the victim indicated that probation was satisfactory thereby waiving her right to object to shock probation; the victim was bound by the plea agreement and breached it by opposing shock probation; and any difference in position between the Commonwealth and victim should have been disclosed in the plea negotiations.

In 1986 the Kentucky Legislature enacted KRS 421.500 through KRS 421.550 (the Crime Victim and Witness Protection statutes). KRS 421.500 defines a "victim" as one "who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime classified as criminal homicide, robbery, rape, assault...." Hence, Ms. Claycomb qualifies as a "victim" entitled to rights conferred by statute.

KRS 421.520 (Victim Impact Statement) provides the following:

(1) The attorney for the Commonwealth shall notify the victim that, upon conviction of the defendant, the victim has the right to submit a written victim impact statement to the probation office responsible for preparing the pre-sentence investigation report for inclusion in the report or to the court should such a report be waived by the defendant.

(2) The impact statement may contain, but need not be limited to, a description of the nature and extent of any physical, psychological or financial harm suffered by the victim, the victim's need for restitution and whether the victim has applied for or received compensation for financial loss, and *the victim's recommendation for an appropriate sentence.*

*(3) The victim impact statement shall be considered by the court prior to any decision on the sentencing or release, including shock probation, of the defendant.* (Emphasis added.)

Under Kentucky law the victim has the right to inform the court of the victim's position "on the sentencing or release, including shock probation, of the defendant." KRS 421.520(3).

■ The record does not support the appellant's argument that at the sentencing the victim indicated that probation was satisfactory, and therefore, the victim waived the right to further object. At the sentencing hearing the following exchange took place with regard to restitution.

. . . . .

Court: Would the restitution be satisfactory to the prosecuting witnesses at the rate of $100.00 a month?
Commonwealth (relaying victim's response): Yes.
Court: Very well.

. . . . .

In sum, the trial judge made an inquiry regarding the possible structure of a restitution arrangement. It does not appear that the victim "waived" her right to object to shock probation. Instead, it appears that the victim was merely informing the court that the payment rate was acceptable in the event probation was ultimately granted. The exchange does not rise to the level of being a waiver as contended by appellant.

■ Next, appellant argues that the victim was bound by the Commonwealth's plea agreement. Ms. Claycomb was not made a party to the agreement. Crime

victims should have rights, and they do. We hold that the rights provided to crime victims by KRS 421.500 through 421.550 belong to the victim independent of the Commonwealth, and cannot be plea bargained away without the crime victim's actual approval. Neither the Commonwealth nor appellant extinguished those rights in the plea agreement. Of course, this is not to suggest that the victim can prevent or destroy the plea agreement process, but the victim cannot be made to surrender rights by virtue of an agreement of which she is not a party. If defendants or the Commonwealth wish to bind "victims" from exercising their rights, then they will have to seek their approval on plea agreements. The plea agreement form that appellant signed contained a preprinted signature line for the "prosecuting witnesses"; and counsel for appellant at the shock probation hearing asserted, although incorrectly, that the victim had in fact signed-off on this plea agreement.

Appellant's use of *Lee v. State*, 501 So.2d 591 (Fla.1987) is not convincing. *Lee* was decided on the narrow issue of whether the prosecutor's agreement bound a law enforcement officer of the state. That is not the same situation as we have in this case. Further, *Wood v. Commonwealth*, Ky., 469 S.W.2d 765 (1971) is inapplicable to this issue. In *Wood* the court would not allow the prosecution to inform the court of its position through another agent of the state, the probation officer. In that instance the court prevented the Commonwealth from doing indirectly what it could not do directly. In the current case the victim has rights independent of the Commonwealth and may assert an objection regardless of the Commonwealth's position.

Finally, appellant argues that any disagreement by the victim with respect to the Commonwealth's position should have been disclosed during the plea negotiations. Appellant entered into an agreement with the Commonwealth. He could have insisted upon the victim's inclusion into the agreement. It was the duty of the appellant to determine the relative strength of the agreement. The statutes are very clear on this matter. The victim has the right to convey the impact of the crime to the court and take a stand on sentencing. The Commonwealth and appellant could not dispose of these rights by their own agreement. The victim should not be stripped of her rights as a result of appellant's failure to properly ascertain these rights during the plea agreement negotiations.

This matter is reversed and remanded for a hearing consistent with this Opinion. The Commonwealth shall be barred from any input at the hearing reconsidering the Motion for Shock Probation; however, the victim shall be allowed to make her "recommendation for an appropriate sentence" pursuant to KRS 421.520(2), as well as exercising any other rights provided her by law.

All concur.